JAMES E. CECCHI
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
Tel: 973-994-1700
Fax: 973-994-1744
jcecchi@carellabyrne.com

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DON TRAN, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| THE BANK OF NOVA SCOTIA, COREY FLAUM, and JOHN DOES 1-25 | |
| Defendants, | |

Plaintiff files this civil action under Section 9(a) and 22(a) of the Commodity Exchange Act ("CEA"), Rule 23 of the Federal Rules of Civil Procedure, and common law for damages, costs of suit, and other relief as may be just and proper, each on behalf of itself and a class of those similarly situated ("Class" as defined below) against Defendants Bank of Nova Scotia ("Defendant Bank"), Corey Flaum, and John Does 1-25 (together "Defendants") for Defendants' unlawful and intentional manipulation of precious metals futures contracts. Based upon personal knowledge, information, belief, and investigation of counsel, Plaintiff specifically alleges the following:

### INTRODUCTION

1.      Between at least January 2008 and until at least July 2016 (the "Class Period"), Defendants engaged in fraudulent and manipulative trading practices in connection with the purchase and sale of gold, silver, platinum, and palladium futures contracts ("precious metals futures contracts") traded on the New York Mercantile Exchange ("NYMEX") and the Commodity Exchange, Inc. ("COMEX") in violation of the Commodity Exchange Act, 7 U.S.C. § 1 et seq. ("CEA") and the common law.

2.      Defendants consist of a group of precious metals traders and their employer. Corey Flaum and John Doe Defendants' actions were within the scope of their employment with Defendant Bank.

3.      On August 13, 2020, Defendant Bank entered into a Deferred Prosecution Agreement with the United States Department of Justice in connection with the above conduct. There, Defendant Bank agreed to pay $60,451,102—including $42,000,000 in criminal fines.[1]

4.      Defendant Bank agreed that the above facts established "beyond a reasonable doubt" that Defendants "knowingly and intentionally attempt[ed] to manipulate the price of certain commodities for future delivery, namely gold, silver, platinum, and palladium futures contracts."[2]

5.      Defendant Bank agreed under penalty of being subject to prosecution, that it shall not make any public statement "in litigation or otherwise, contradicting the acceptance of

---

[1] *United States v. Bank of Nova Scotia*, No. 20-cr-707, ECF Nos. 1-2 (D.N.J. Aug. 19, 2020).

[2] *Id.* at ECF No. 2, Attachment A (declaring that Defendant Bank would not contradict the Statement of Facts should the government pursue the deferred prosecution; the facts there "establish beyond a reasonable doubt the charges set forth. . . ").

responsibility by the Company set forth [in the Deferred Prosecution Agreement] or the facts described in the attached statement of facts."[3]

6.      On July 25, 2019, Defendant Corey Flaum pled guilty to one count of attempted commodities price manipulation. He "knowingly and intentionally manipulated and attempted to manipulate the price of certain commodities for future delivery, namely precious metals futures contracts. . . ."[4]

7.      Defendants engaged in a long running illicit scheme to "spoof" the market for futures contracts—contracts to enter into a future transaction at a predetermined price. Defendants placed legitimate buy and sell orders, and would then place manipulative orders to artificially drive the price in a favorable direction for Defendants. After the legitimate order was executed, Defendants would cancel the manipulative orders before the manipulative orders could be executed.

8.      Accordingly, the spoof orders were designed to, and did, artificially move the prices of NYMEX and COMEX precious metals futures and options contracts during the Class Period in a direction that was favorable to Defendants, but unfavorable to Plaintiff.

9.      Defendants' deliberate acts distorted price signals and manipulated the prices of NYMEX and COMEX precious metals futures and options contracts during the class period. Defendants' actions were intended to, and did, induce other market participants, such as Plaintiff, to trade against Defendants' genuine orders.

10.     But for Defendants' misleading inducements, Plaintiff and other market participants would not have traded.

---

[3] *Id.* at ¶ 33.

[4] *U.S. v. Flaum*, No. 19-338, ECF No. 2 ¶ 2 (E.D.N.Y. 2019).

## JURISDICTION AND VENUE

11.     Gold, silver, platinum, and palladium are "commodities" and are the "commodities underlying" the futures and options contracts traded on the NYMEX and COMEX, as those terms are defined and used in Sections 1(a)(4) and 22 of the CEA, 7 U.S.C. §§ 1a(4) and 25(a)(1)(D), respectively.

12.     The Court has subject matter jurisdiction over this action pursuant to 7 U.S.C. § 1 et seq. and 28 U.S.C. §§ 1331 and 1337.

13.     The Court has personal jurisdiction over Defendants pursuant to Section 22 of the CEA, as Defendants transact business in this District. Furthermore, Defendants admitted that the conduct in the Information, which explains the basis of Plaintiff's injury, occurred in the "District of New Jersey, and elsewhere. . . ."[5]

14.     Defendant Bank has also consented to this Court's personal jurisdiction on these facts when it explicitly consented to the filing of the Information in this District.

15.     Venue is proper in the District of New Jersey pursuant to 7 U.S.C. § 25(c) and 28 U.S.C. § 1391(b)(2), as Defendants admitted that the conduct alleged happened in this District and elsewhere. Furthermore, hearing the complaint in this venue would serve judicial economy as the Court is familiar with the facts, the underlying conduct, and the sophisticated subject matter of the complaint.

16.     Defendants made use of the means and instrumentalities of transportation or communication in, or the instrumentalities of, interstate commerce, or of the mails in connection with the unlawful acts and practices and courses of business alleged in this complaint.

## PARTIES

_____

[5] *Id.* at ECF No. 1 ¶¶ 1, 10.

**I.      Plaintiff**

17.      Plaintiff Don Tran is an individual who resides in El Monte, California. During the Class Period, Mr. Tran transacted in silver and gold futures contracts at artificial prices proximately caused by Defendants' manipulative conduct. As a result, Mr. Tran was damaged and suffered legal injury to his business or property.

**II.      Defendants**

18.      Defendant Bank of Nova Scotia is a corporation headquartered at 44 King Street West Toronto, Ontario, Canada. Defendant's US based Traders transacted in precious metals futures and options contracts on NYMEX and COMEX throughout the Class Period.

19.      Defendant Flaum was employed by Defendant Bank of Nova Scotia during the Class Period. Defendant Flaum pled guilty to one count of attempted commodities price manipulation related to and forming the basis of the allegations herein.

20.      John Does 1-25 are other precious metals traders employed by Defendant Bank of Nova Scotia that participated in, facilitated, and assisted with the manipulation and unlawful conduct alleged herein. These defendants are both known and unknown to the United States Attorney.

## FACTUAL ALLEGATIONS

**I.      Overview of Precious Metals Futures**

21.      The CME Group is comprised of four Designated Contract Markets ("DCMs").[6] The CME Group is also the holding company and the parent of the NYMEX and COMEX. The CME Group's Global Headquarters is located at 20 South Wacker Drive, Chicago, Illinois 60606.

---

[6] The DCMs are CME, CBOT, COMEX, and NYMEX.

22.     CME Globex, which is owned and operated by the CME Group, is an electronic trading platform used to trade futures and options contracts. CME Globex is an open access marketplace that allows a market participant to directly enter his or her own trades and participate in the trading process. This includes the ability to view the book of order and real time price data virtually 24 hours a day.

23.     To access CME Globex, customers must have a CME Group clearing firm relationship, CME Group-certified trading application and connectivity to CME Globex.[7] Thus, anyone who has an account with a Futures Commission Merchant ("FCM")[8] or an Introducing Broker, can trade on CME Globex.[9]

24.     CME Globex falls within the Commodity Futures Trading Commission's definition of an "exchange" i.e., "[a] central marketplace with established rules and regulations where buyers and sellers meet to trade futures and options contracts or securities."[10]

25.     A variety of CME Group products are available to trade on the CME Globex platform including, but not limited to, precious metals futures and options contracts.[11]

26.     A futures contract is a legally binding, standardized agreement to buy or sell a standardized commodity, specifying quantity and quality at a set price on a future date (the

---

[7] CME Globex Reference Guide, p. 5 (available at https://www.cmegroup.com/globex/files/GlobexRefGd.pdf).

[8] An FCM is an individual or organization involved in the solicitation or acceptance of buy or sell orders for futures or options on futures in exchange for a commission or other assets from customers.

[9] CME Globex Reference Guide, p. 2 (available at https://www.cmegroup.com/globex/files/GlobexRefGd.pdf).

[10] https://www.cftc.gov/ConsumerProtection/EducationCenter/CFTCGlossary/glossary_e.html.

[11] CME Globex Reference Guide, p. 5 (available at https://www.cmegroup.com/globex/files/GlobexRefGd.pdf).

delivery date). In practice, very few futures contracts, which are traded each year, are satisfied by the delivery of the underlying commodity.

27.     There are two sides to a futures contract a "long" side and a "short" side. The "long" side is the buyer of the futures contract. This means that the person with the "long" side is obligated to take delivery and pay for the commodity at the agreed upon future delivery date.

28.     The "short side" is the seller of the contract. This means that the person with the "short" side is obligated to make delivery of the underlying commodity on the agreed upon future delivery date.

29.     Very few futures contracts are satisfied by delivery as most long buyers and short sellers will offset or roll their obligation. To offset a futures contract the individual must execute a trade which is the opposite of the position they currently have. For example, if an individual buys one long futures contract set for delivery in December, to offset that trade, they must sell one short futures contract of the same futures set to delivery in December.

30.     An options contract is an agreement that gives the buyer, or "option holder," the right, but not the obligation, to either buy or sell something at a specified price during a specified time period. The buyer of an option pays an "option premium" to the seller for the right to buy (call option) or sell (put option) the underlying commodity.

31.     A "call option" confers upon the buyer the right, but not the obligation, to buy the commodity at the specified price (the "strike" price) within a specific period of time. Conversely, the seller of a "call option" is obligated to deliver a long position in the underlying commodity if the buyer opts to exercise the option. This means the call buyer will profit when the underlying asset increases in price, and the seller profits when the underlying asset decreases in price.

32.     A "put option" confers upon the buyer the right, but not the obligation, to sell the underlying commodity at the strike price within a specific period of time. The seller of a put option then has the obligation to buy the underlying commodity at the strike price if the option is exercised. A put option becomes more valuable as the price of the underlying stock depreciates relative to the strike price. Conversely, a put option loses its value as the underlying stock increases. It also decreases in value as the expiration date approaches.

33.     The COMEX Gold Futures Contract ("GC") is a futures contract where the underlying commodity is 100 troy ounces of gold. COMEX gold futures contracts are listed on the COMEX and traded electronically on the CME's Globex platform.[12]

34.     The COMEX Gold Options Contract ("OG") is an options contract where the underlying contract is one COMEX Gold futures contract. COMEX gold options contracts are listed on the COMEX and traded electronically on the CME's Globex platform.[13]

35.     The NYMEX Palladium Futures Contracts ("PA") have an underlying contract commodity is 100 troy ounces palladium. NYMEX palladium futures contracts are listed on the NYMEX, subject to the rules and regulations of NYMEX, and traded electronically on the CME's Globex platform.[14]

36.     The NYMEX Palladium Options Contracts ("PAO") have an underlying contract of one NYMEX Palladium futures contract. NYMEX palladium options contracts are listed on the NYMEX, subject to the rules and regulations of NYMEX, and traded electronically on the CME's Globex platform.[15]

---

[12] See https://www.cmegroup.com/trading/metals/precious/gold_contractSpecs_futures.html.

[13] https://www.cmegroup.com/trading/metals/precious/gold_contractSpecs_options.html.

[14] https://www.cmegroup.com/trading/metals/precious/palladium_contractSpecs_futures.html

[15] https://www.cmegroup.com/trading/metals/precious/palladium_contractSpecs_options.html

37.     The NYMEX Platinum Futures Contract ("PL") have an underlying commodity of 50 troy ounces of platinum. NYMEX platinum futures contracts are listed on the NYMEX, subject to the rules and regulations of NYMEX, and traded electronically on the CME's Globex platform.[16]

38.     The NYMEX Platinum Options Contract ("PO") have an underlying contract of one NYMEX Platinum futures contract. NYMEX platinum options contracts are listed on the NYMEX, subject to the rules and regulations of NYMEX, and traded electronically on the CME's Globex platform.[17]

39.     The COMEX Silver Futures Contract ("SI") is a futures contract where the underlying commodity is 5,000 troy ounces of silver. COMEX silver futures contracts are listed on the COMEX, subject to the rules and regulations of COMEX, and traded electronically on the CME's Globex platform.[18]

40.     The COMEX Silver Options Contract ("SO") is a futures contract where the underlying commodity is one COMEX Silver futures contract. COMEX silver futures contracts are listed on the COMEX, subject to the rules and regulations of COMEX, and traded electronically on the CME's Globex platform.[19]

41.     Spoofing is a disruptive and prohibited trading practice. It is the act of entering an order or causing an order with the intent to cancel the order before execution or to modify the

---

[16] https://www.cmegroup.com/trading/metals/precious/platinum_contractSpecs_futures.html

[17] https://www.cmegroup.com/trading/metals/precious/platinum_contractSpecs_options.html

[18] https://www.cmegroup.com/trading/metals/

[19]https://www.cmegroup.com/trading/metals/precious/silver_contractSpecs_options.html?option ProductId=193#option ProductId=193

order to avoid execution. This is typically done to generate selling or buying interest in a specific contract and creates a misleading and artificial appearance of buy-or sell-side pressure.[20]

### A. Defendants Manipulated the Prices of NYMEX and COMEX Precious Metals Futures and Options Contracts to Artificial Levels Throughout the Class Period

42. The social benefits that justify commodity futures trading are (a) price discovery, (b) efficient risk-transfer, and (c) price stabilization. *See Cargill. Inc. v. Hardin*, 452 F.2d 1154, 1156-58 (8th Cir. 1971). Price manipulation destroys all three of these benefits. *Cargill*, 452 F.2d at 1156-58.

43. To reap those social benefits, commodities traders must be acting in accordance with the standard behavior of acting in an economic and economically rational manner.

44. When an organization or an individual fails to act in an economic or economically rational manner those actions (or lack of actions) are deemed to be pursuant to a manipulative scheme.

45. An example of a failure to act in accordance with the social benefits of commodities futures trading is by "spoofing," and creating an illusion in the market to benefit from the false market movement they created. Such actions were taken by the Defendants over the Class Period.

46. Instead of acting in an economically rational manner, Defendants perpetrated a sophisticated manipulative scheme in which they injected materially false and illegitimate signals of supply and demand into the market in order to (a) induce other market participants to trade against Defendants' genuine orders (i.e., orders that Defendants did want to execute) on the opposite side of the market from the spoof orders at prices, quantities, and times at which

---

[20] https://institute.cmegroup.com/courses/market-regulation/modules/disruptive-practices-prohibited-spoofing

Plaintiff and the other market participants otherwise would not have traded, and (b) financially benefit Defendants.

47.     Defendants routinely placed electronic orders to buy and sell NYMEX and COMEX Precious Metals Futures Contracts with the intent to cancel those orders before execution to make profits and avoid losses.

48.     A specific example of Defendants' manipulative behavior took place on December 31, 2015. On that date, at approximately 11:39:10.679 (Central Standard Time), Defendant Flaum, while working on behalf of and within the scope of his employment with Defendant Bank, placed a genuine offer to sell five gold futures contracts at the price of $1060.40. Less than 90 seconds later, Flaum placed a manipulative order to buy 245 gold futures contracts at the price of $1059.90.

49.     Defendants placed the manipulative buy order with the intent to cancel the offer before it could be executed. This sent materially false and illegitimate signals of supply and created an "illusion of demand" in the market, with the purpose of artificially moving the market price higher.

50.     Defendants' conduct did indeed artificially push the market price higher, and thus Defendants' genuine offer executed. Less than two seconds after Defendants' sale order executed, Flaum, again within the scope of his employment with Defendant Bank, cancelled the manipulative order in its entirety.

51.     Defendant Bank cannot dispute the conduct alleged in paragraphs 49-51, as the conduct is described in the Statement of Facts in the Deferred Prosecution Agreement.[21]

---

[21] *U.S. v. Bank of Nova Scotia*, No. 20-cr-707, ECF No. 2, Attachment A at ¶¶ 4-5.

52.     This manipulative strategy injured Plaintiff and the Class by causing them to transact in NYMEX and COMEX precious metals futures and options contracts at artificial prices and thereby suffer monetary losses.

53.     Through their manipulative conduct, Defendants unlawfully increased their profits at the expense of Plaintiff and the Class. As a result of Defendants' sophisticated manipulative strategy, innocent market participants such as Plaintiff who traded NYMEX and COMEX precious metals futures and options contracts, traded at artificial prices throughout the Class Period caused by Defendants' manipulation.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action on behalf of itself, and all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons and entities that were injured by Defendants' illegal activities who purchased or sold any NYMEX platinum futures contract, NYMEX palladium futures contract, COMEX silver futures contract, COMEX gold futures contract, or any option on those futures contracts, during the period of at least January 2008 through at least July 2016.

55.     Excluded from the Class are Defendants, their officers and directors, management, employees, subsidiaries, or affiliates. Also excluded from the Class is the Judge presiding over this action, his or her law clerks, spouse, any other person within the third degree of relationship living in the Judge's household, the spouse of such person, and the United States Government.

56.     The Class is so numerous that joinder of the individual members of the proposed Class is impracticable. While the exact number of Class members is unknown to Plaintiff, Plaintiff believes that at least hundreds, if not thousands, of geographically dispersed Class members transacted in NYMEX platinum futures contracts, NYMEX palladium futures

contracts, COMEX silver futures contracts, COMEX gold futures contracts, or any option on those futures contracts throughout the Class Period.

57.    Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the members of the Class sustained damages arising out of Defendants' common course of conduct in the violations of law as complained of herein. The injuries and damages of each member of the Class were directly caused by Defendants' wrongful conduct in violation of the laws as alleged herein.

58.    Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is an adequate representative of the Class and has no interests that are adverse to the interests of absent Class members. Plaintiff has retained counsel competent and experienced in class action litigation, including commodity futures manipulation class action litigation.

59.    Common questions of law or fact exist as to Plaintiff and all Class members, and these common questions predominate over any questions affecting only individual members of the Class. These predominant questions of law and/or fact common to the Class include, without limitation:

        a.    whether Defendants manipulated the price of NYMEX platinum futures contract(s), NYMEX palladium futures contract(s), COMEX silver futures contract(s), COMEX gold futures contract(s), or the price of options on those futures contracts, in violation of the CEA;

        b.    whether Defendants manipulated the price of NYMEX platinum futures contract(s), NYMEX palladium futures contract(s), COMEX silver futures contract(s), COMEX gold futures contract(s), or the price of options on those futures contracts, to be artificial;

    c.      whether such manipulation caused a cognizable injury under the CEA;

    d.      whether Defendants' unlawful conduct caused actual damages to Plaintiff and the Class;

    e.      whether Defendants were unjustly enriched at the expense of Plaintiff and members of the Class;

    f.      the operative time period and extent of Defendants' unlawful conduct; and

    g.      the appropriate nature and measure of Class-wide relief.

60.    A class action is superior to other methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. Treatment as a class action will permit a "large number" of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of claims by many class members who could not afford individually to litigate claims such as those asserted in this Complaint. The cost to the court system of adjudication of such individualized litigation would be substantial. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

61.    Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**FRAUDULENT CONCEALMENT**

62.    The applicable statutes of limitations relating to the claims for relief alleged in herein were tolled because of fraudulent concealment involving both active acts of concealment by Defendants and inherently self-concealing conduct.

14

63.     Defendants concealed their manipulative acts by, inter alia, placing orders electronically with the intent to buy or sell NYMEX and COMEX Precious Metals Futures Contracts at a certain price, even though they secretly had no intent of transacting at that level. At no point did Defendants disclose that they placed these orders to manipulate the prices of NYMEX and COMEX Precious Metals Futures Contracts. Because of such fraudulent concealment, and the fact that Defendants' manipulation is inherently self-concealing, Plaintiff and the members of the Class could not have discovered the existence of Defendants' manipulation any earlier than the date of the public disclosures thereof. As a result, Plaintiff and the Class had no knowledge of Defendants' unlawful and self-concealing manipulative acts and could not have discovered the same by the exercise of due diligence on or before August 19, 2020 when the United States filed in the District of New Jersey the Criminal Information and Deferred Prosecution Agreement.

64.     As a result of the concealment of Defendants' unlawful conduct, and the self-concealing nature of Defendants' manipulative acts, Plaintiff asserts the tolling of the applicable statute of limitations affecting the rights of the causes of action asserted by Plaintiff.

65.     Defendants are equitably estopped from asserting that any otherwise applicable limitations period has run.

## FIRST CLAIM FOR RELIEF
### (Manipulation in Violation of The Commodity Exchange Act 7 U.S.C. § 1 et seq.)
### (As against All Defendants)

66.     Plaintiff realleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

67.     Defendants through their acts alleged herein, from at least January 2008 through at least July 2016 specifically intended to and did cause unlawful and artificial prices of

NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, in violation of the CEA, 7 U.S.C. § 1, et seq., through their use of fictitious buy and sell orders and other manipulative conduct.

68.     Defendants manipulated the price of a commodity in interstate commerce or for future delivery on or subject to the rules of any registered entity, in violation of the CEA.

69.     During the Class Period, the prices of NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, did not result from the legitimate market information and the forces of supply and demand. Instead, the prices of NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, were artificially inflated, or deflated, by Defendants' spoofing and other manipulative trading activities.

70.     Throughout the Class Period, Defendants entered large orders to buy or sell without the intention of having those orders filled, and specifically intending to cancel those orders prior to execution. Defendants did this with the intent to inject illegitimate information about supply and demand into the marketplace, and to artificially move prices up or down to suit Defendants' own trades and positions. As a result of these artificial prices, Plaintiff and the Class suffered losses on their trades in NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts.

71.     Through their use of spoofing and other manipulative techniques, Defendants manipulated the prices of NYMEX platinum futures contracts, NYMEX palladium futures

contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, throughout the Class Period and thereby caused damages to Plaintiff and Class members who purchased or sold such instruments at the artificially inflated or deflated prices.

72.     At all times and in all circumstances previously alleged herein, Defendants had the ability to cause and did cause artificial prices of NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts. Defendants, either directly and/or through their employees and/or affiliates, were active in the markets for NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, and were aware of the effects of spoofing and other manipulative conduct on those markets.

73.     By their intentional misconduct, Defendants violated Sections 6(c), 6(d), 9(a), and 22(a) of the CEA, 7 U.S.C. §§ 9, 13b, 13(a), and 25(a), throughout the Class Period.

74.     As a result of Defendants' unlawful conduct, Plaintiff and members of the Class have suffered damages and injury-in-fact due to artificial prices for NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, to which Plaintiff and the Class would not have been subject but for the unlawful conduct of the Defendants as alleged herein.

75.     Plaintiff and members of the Class are entitled to actual damages sustained in NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts for the violations of the CEA alleged herein.

**SECOND CLAIM FOR RELIEF**
**(Employing a Manipulative and Deceptive Device**
**In Violation of the Commodity Exchange Act,**
**7 U.S.C. § 1, et seq. and Regulation 180.1(a))**
**(As against All Defendants)**

76.     Plaintiff realleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

77.     Defendants' unlawful conduct as described herein, including the use of systematically submitting and cancelling spoof orders and engaging in other manipulative conduct in order to artificially move prices for NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, constitutes the employment of a manipulative and deceptive device.

78.     As alleged herein, Defendants acted intentionally—and, even if they are found to not have acted intentionally, then at least acted recklessly—in employing the manipulative and deceptive device to procure ill-gotten trading profits at the expense of Plaintiff and the Class.

79.     By their intentional misconduct, Defendants violated Sections 6(c) and 22(a) of the CEA, 7 U.S.C. §§ 9 and 25(a), throughout the Class Period.

80.      As a result of Defendants' unlawful conduct, Plaintiff and members of the Class have suffered damages and injury-in-fact due to artificial prices for NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, to which Plaintiff and the Class would not have been subject but for the unlawful conduct of the Defendants as alleged herein.

81.      Plaintiff and members of the Class are entitled to damages for the violations of the CEA alleged herein.

18

## THIRD CLAIM FOR RELIEF
### (Principal-Agent Liability In Violation Of The Commodity Exchange Act
### 7 U.S.C. § 1 et seq.)
### (As against All Defendants)

82.      Plaintiff realleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

83.      Each Defendant is liable under Section 2(a)(1) of the CEA, 7 U.S.C. § 2(a)(1), for the manipulative acts of their agents, representatives, and/or other persons acting for them in the scope of their employment.

84.      Plaintiff and members of the Class are entitled to damages for the violation alleged herein.

## FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (As against All Defendants)

85.      Plaintiff realleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

86.      Defendants benefited financially from their unlawful acts. As alleged herein, Defendants submitted spoof orders electronically and employed other manipulative techniques to manipulate the prices of NYMEX platinum futures contracts, NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts, in an artificial direction. Defendants intended to, and did, artificially alter prices in a direction that benefitted their trades and positions, at the expense of Plaintiff and the Class.

87.      These unlawful acts caused Plaintiff and other members of the Class to suffer injury, lose money, and transact at artificial prices for in NYMEX platinum futures contracts,

NYMEX palladium futures contracts, COMEX silver futures contracts, COMEX gold futures contracts, and options on those futures contracts.

88.     As a result of the foregoing, it is unjust and inequitable for Defendants to have enriched themselves in this manner at the expense of Plaintiff and members of the Class, and the circumstances are such that equity and good conscience require Defendants to make restitution.

89.     Each Defendant should pay restitution for its own unjust enrichment to Plaintiff and members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the requested relief as follows:

a.      for an Order certifying this lawsuit as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, designating Plaintiff as the Class representative, and appointing Plaintiff's counsel as Class counsel;

b.      for a Judgment awarding Plaintiff and the Class damages against Defendants for their violations of the CEA, together with prejudgment interest at the maximum rate allowable by law;

c.      for a Judgment awarding Plaintiff and the Class restitution of any and all sums of Defendants' unjust enrichment;

d.      for an award to Plaintiff and the Class of the costs of suit, including reasonable attorneys' and experts' fees and expenses; and

e.      for such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues.


Dated: September 2, 2020

<div style="margin-left: 50%;">

*/s/ James E. Cecchi*
James E. Cecchi
**CARELLA, BYRNE, CECCHI
OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700
jcecchi@carellabyrne.com

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Joseph H. Meltzer
Melissa L. Troutner
Ethan J. Barlieb
Jordan Jacobson
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
jmeltzer@ktmc.com
mtroutner@ktmc.com
ebarlieb@ktmc.com
jjacobson@ktmc.com

*Counsel for Plaintiff and the Proposed Class*

</div>